El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
En este recurso se nos solicita exclusivamente que revo-quemos una orden de injunction preliminar que requiere que las autoridades de la universidad pública levanten un receso académico y administrativo en uno de sus recintos. En auxilio de nuestra jurisdicción, paralizamos los efectos de esa orden mientras considerábamos el caso. Sin embargo, las autoridades concluyeron el receso de todos *971 modos. Por esa razón, concluimos que el caso es académico y ordenamos su desestimación.
I
El 21 de abril de 2010, los recurridos Fernando Moreno Orama y Jorge Farinacci Fernós, estudiantes del Recinto de Río Piedras de la Universidad de Puerto Rico (U.P.R.), acudieron al Tribunal de Primera Instancia, Sala de San Juan, y cuestionaron la determinación de la Rectora inte-rina del recinto, Dra. Ana R. Guadalupe Quiñones, de de-cretar un receso académico y administrativo en el recinto. En la demanda, los estudiantes recurridos solicitaron un entredicho provisional inmediato, un injunction preliminar y una sentencia en la que se declarara inconstitucional y se dejara sin efecto el receso académico y administrativo que decretó la Rectora interina.
En sus determinaciones de hechos, el Tribunal de Pri-mera Instancia dictaminó como hechos probados que: (1) el 13 de abril de 2010, se llevó a cabo una asamblea estudian-til en el Recinto de Río Piedras, en la cual se decidió hacer un “paro” de cuarenta y ocho horas el 21 y 22 de abril de 2010; (2) el 21 de abril de 2010, un grupo de manifestantes, algunos con tubos, cadenas y candados, se dirigió a los por-tones del recinto y varios agentes y estudiantes resultaron heridos; (3) el mismo día, los manifestantes cerraron el portón frente al Museo de la U.P.R.; (4) luego de varios incidentes violentos, la Policía de Puerto Rico limitó el ac-ceso al interior del recinto por ese portón, y (5) ese mismo día, a eso de las 9:30 a.m., la Rectora interina Guadalupe Quiñones decretó un receso académico y administrativo in-definido, pues los eventos violentos ocurridos le llevaron a concluir que no podía controlar la situación.
El foro primario determinó que a pesar de estos sucesos, el receso académico y administrativo que decretó la Rec-tora interina era inválido, pues no cumplió con los requisi- *972 tos formales que exige el Reglamento Núm. 6479, mejor conocido como Reglamento General de la Universidad de Puerto Rico de 16 de febrero de 2002, según enmendado. Por consiguiente, el Tribunal de Primera Instancia emitió una orden de injunction preliminar en la que ordenó al Presidente de la U.P.R., Dr. José R. De La Torre, y a la Rectora Guadalupe Quiñones que cesaran de poner en vigor el receso académico y administrativo, y abrieran el re-cinto en o antes del lunes, 3 de mayo de 2010.
Inconformes con esta determinación, la U.P.R. acudió en recurso de certificación intrajurisdiccional a este Tribunal y solicitó que, en auxilio de nuestra jurisdicción, dejáramos sin efecto la orden de injunction preliminar. El 30 de abril de 2010, emitimos una resolución en la que expedimos el auto de certificación intrajurisdiccional y le dimos término a los recurridos para que comparecieran. Además, parali-zamos los efectos de la orden de injunction preliminar.
El 3 de mayo de 2010, los estudiantes recurridos com-parecieron ante este Tribunal. En lo pertinente, solicitaron la desestimación del recurso por academicidad. Esta solici-tud se fundamentó en que la rectora Guadalupe Quinones “ha tornado académico (sic) la presente controversia”, ya que, aunque los efectos de la orden de injunction prelimi-nar estaban paralizados, la Rectora informó que, de todos modos, el receso académico y administrativo terminaría el lunes, 3 de mayo de 2010. Moción urgente de desestima-ción por academicidad, pág. 2. Eso es, en esencia, lo mismo que el Tribunal de Primera Instancia había ordenado. Ma-nifiestan los estudiantes recurridos, quienes a su vez son los demandantes de este pleito, que el receso administra-tivo “es el único objeto de la controversia en este caso”. Id. Por ello, no hay “controversia entre las partes en el caso de epígrafe”, ya que “la misma Parte Peticionaria ha dejado sin efecto el receso que se ha impugnado en este pleito” y “la Rectora motu proprio [ha] optado por reabrir el Recinto”. Íd., págs. 2-3.
*973 Por su parte, la U.P.R. compareció y se opuso a la des-estimación por academicidad. La U.P.R. acepta que el 30 de abril de 2010, la Rectora dejó sin efecto el receso acadé-mico y administrativo que provocó este litigio. Sin embargo, la U.P.R. sostiene que este Tribunal debe atender este asunto porque, aunque el pleito es académico, aplica la excepción de recurrencia. No le asiste la razón.
II
Los tribunales existen para atender los casos que sean justiciables, pues su deber es adjudicar las controversias reales y vivas. Lozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893 (2010); E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). El término “justiciabilidad” incluye criterios doctrinales que hacen viable la intervención oportuna de los tribunales, uno de los cuales es recogido en la doctrina de academicidad. Lozada Tirado et al. v. Testigos Jehová, supra.
 La doctrina de justiciabilidad no se da en abs-tracto, pues persigue objetivos importantes. Entre éstos se encuentra: no permitir la obtención de “un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido re-clamado, o una sentencia sobre un asunto que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia”. E.L.A. v. Aguayo, supra, pág. 584, citando a Ex parte Steele, 162 Fed. 694, 701 (N.D. Ala. 1908). Una controversia abstracta, ausente un perjuicio o ame-naza real y vigente a los derechos de la parte que los re-clama, no presenta el caso y controversia que la Constitu-ción exige para que los tribunales puedan intervenir. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).
La doctrina de academicidad da “vida al principio de justicibialidad”. Crespo v. Cintrón, 159 D.P.R. 290, 298 (2003). El “propósito de esta doctrina es evitar el uso in- *974 adecuado de recursos judiciales y obviar precedentes innecesarios”. P.N.P. v. Carrasquillo, 166 D.P.R. 70, 75 (2005). Esta doctrina tiene cuatro excepciones, a saber: “(1) cuando se presenta una controversia recurrente y capaz de evadir revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado pero no tiene visos de permanencia; (3) cuando la controversia se ha tomado aca-démica para el representante de una clase pero no para otros miembros de la clase, y (4) cuando persisten conse-cuencias colaterales que no se han tornado académicas”, Íd., pág. 76. Estas excepciones tienen que usarse con me-sura, pues no se pueden obviar los límites constitucionales que inspiran la doctrina de academicidad.
La excepción de recurrencia permite, en casos ex-cepcionales, revisar en sus méritos una controversia académica a base de tres criterios rectores: (1) la probabilidad de recurrencia; (2) la identidad de las partes involucradas en el posible pleito futuro, y (3) la probabilidad de que la controversia evada la revisión judicial. Lozada Tirado et al. v. Testigos Jehová, supra.
Un tribunal tiene el “deber [de] desestimar un pleito académico”. E.L.A. v. Aguayo, supra, pág. 562, citando a Little v. Bowers, 134 U.S. 547 (1890). No tiene discreción para negarse a hacerlo. De hecho, el “tribunal puede ordenar la desestimación inmediata del recurso si comprueba que no existe una controversia real entre los litigantes”. Íd. “Como norma general, un caso debe desestimarse por académico cuando los hechos o el derecho aplicable ha[n] variado de tal forma que ya no existe una controversia vigente entre partes adversas.” P.N.P. v. Carrasquillo, supra, pág. 75. Véase Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980).
En nuestra opinión en Berberena v. Echegoyen, 128 D.P.R. 864, 870 esc. 2 (1991), resumimos la norma reafirmada recientemente por el Tribunal Supremo de Esta- *975 dos Unidos en Alvarez v. Smith, 130 S.Ct. 576. Allí se de-cidió que cuando las circunstancias (happenstance) tornan académico un caso y la situación no es el producto de un acuerdo (settlement), entonces “el decreto del tribunal de instancia queda anulado (vacated) y el caso se devuelve con órdenes de desestimar la demanda”. Berberena v. Echegoyen, supra, pág. 870 esc. 2. Cuando un caso se torna aca-démico, el tribunal revisor tiene el deber de no tan sólo desestimar el recurso apelativo, sino también de dejar sin efecto el dictamen revisado y devolver el caso con instruc-ciones de que se desestime. Duke Power Co. v. Greenwood County, 299 U.S. 259, 267 (1936). Véanse, además: Alvarez v. Smith, supra; Alabama v. Davis, 446 U.S. 903 (1980); United States v. Munsingwear, Inc., 340 U.S. 36 (1950). El propósito de esta norma es evitar que un dictamen que se tornó académico siga en vigor y obligue a las partes. La desestimación deja el camino libre a la litigación futura de las disputas entre las partes y preserva sus derechos, sin perjudicar a ninguna de ellas por una decisión que era me-ramente preliminar. Alvarez v. Smith, supra, pág. 581, citando United States v. Munsingwear, Inc., 340 U.S. 36 (1950) (“[W]e normally do vacate the lower court judgment in a moot case because doing so clears the path for future relitigation of the issues between the parties, preserving the rights of all parties, while prejudicing none by a decision which ... was only preliminary”). (Enfasis suplido.) Véase R.L. Stern, E. Gressman, S.M. Shapiro y K.S. Geller, Supreme Court Practice, 7ma ed., Washington, D.C., The Bureau of National Affairs, 1993, Sec. 18.5, págs. 723-724.
Ill
El acto, que sirvió de base para la demanda judicial de los recurridos, fue eliminado por la Rectora copeticionaria. Los estudiantes recurridos intentaron invalidar el receso académico y administrativo decretado por la Rectora *976 interina. Aunque ya no estaba en vigor la orden de injunction preliminar, de todos modos la Rectora interina levantó voluntariamente el receso académico y administrativo. Por ello, el pleito se ha tornado académico.
No aplica la excepción de recurrencia, pues no contamos con fundamentos suficientes para determinar que esta con-troversia pueda repetirse y nada indica que pueda escapar una revisión judicial. De hecho, la controversia no escapó de la revisión judicial. Fueron las propias actuaciones de la Rectora interina la causa por la cual se tomó en académica la controversia objeto de este recurso. Más aún, nada im-pide que los estudiantes recurridos, o cualquier otra persona que se sienta peijudicada, impugne en los tribunales, por los mismos fundamentos, un receso académico y admi-nistrativo similar que se decretare en el futuro. Sin embargo, aventurarnos a asegurar que se va a decretar ese receso de nuevo sería adentrarnos en el campo de la especulación.
La U.P.R. sostiene que en otro caso ante el Tribunal de Primera Instancia se resolvió que “los manifestantes no podían impedir la entrada al recinto” y que “es muy probable, pues, que dada su naturaleza[,] casos como el presente no puedan ser resueltos por esta Curia oportunamente”. Oposición a Moción de desestimación por academicidad, pág. 4. Ese argumento pasa por alto que este caso no versa sobre ese otro asunto que la U.P.R. alega que planteó ante el foro primario en otro pleito que no está ante nuestra consideración.
La controversia en este recurso se circunscribe a deter-minar si el receso académico y administrativo fue válido. No están ante nuestra consideración las actuaciones de los manifestantes, que la U.P.R. alega que van dirigidas a im-pedir el acceso al recinto educativo. Repetimos, el único objeto de esta controversia es el receso académico y admi-nistrativo que decretó la Rectora del Recinto de Río Piedras. Esta cuestión se tornó académica, ya que sin que *977 estuviera vigente orden alguna que se lo requiriera, la pro-pia Rectora interina levantó el receso que había decretado.
Por otro lado, la U.P.R. sostiene que en San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640 (2008), resolvimos que una controversia no se convierte en académica si la controversia cesa, porque se paralizan temporeramente los efectos de la orden de cese y desista. Esta aseveración es correcta, pero es totalmente distinta al caso que está ante nuestra consideración. Aquí, la Rectora interina dejó sin efecto el receso académico y administrativo sin visos de temporalidad. En ningún momento, la U.P.R. argumenta que esta acción es provisional. La Rectora tampoco actuó compelida por un dictamen judicial, pues habíamos sus-pendido los efectos de la orden de injunction preliminar.
Debido a que esta controversia se ha tornado acadé-mica, no nos expresamos sobre la validez del receso acadé-mico y administrativo que decretó la rectora interina Guadalupe Quiñones. De igual forma, rechazamos la invitación de las partes a que pasemos juicio sobre los límites de las facultades administrativas de la U.P.R. para garantizar el funcionamiento y la seguridad de sus recintos universita-rios, y también sobre los contornos del derecho de los estu-diantes universitarios a ejercer su derecho a la libertad de expresión y asociación. En el pasado, hemos atendido estos temas en el contexto de un caso y controversia real y vigente. Véase Sánchez Carambot v. Dir. Col. Univ. Humacao, 113 D.P.R. 153 (1982). La Constitución no nos faculta para embarcarnos ahora en un análisis abstracto de estos asuntos.
IV
Por los fundamentos que preceden, se dicta sentencia en la que se deja sin efecto la orden emitida por el Tribunal de Primera Instancia, Sala de San Juan, y se devuelve el caso *978 a ese foro para que desestime la demanda, por haberse tornado académica la controversia en autos.
El Juez Asociado Señor Rivera Pérez y la Jueza Aso-ciada Señora Fiol Matta no intervinieron. El Juez Presi-dente Señor Hernández Denton se inhibió.