**JAMES LUTERBACH CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,**

v.

**Valdas V. ADAMKUS, Regional Administrator for the U.S. Environmental Protection Agency Region V and United States Environmental Protection Agency, Defendants-Appellees.**

No. 84–1223.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1985.

Decided Jan. 13, 1986.

Mark M. Camp, Pfannerstill & Camp, Wauwatosa, Wis., for plaintiff-appellant.

Kathleen P. Dewey, Dept. of Justice, Land Div., Washington, D.C., for defendants-appellees.

Before ESCHBACH and COFFEY, Circuit Judges and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

James Luterbach Construction Co. appeals from a summary judgment for the United States Environmental Protection Agency ("EPA"). The district court held that the EPA properly instructed the Village of East Troy, Wisconsin, to award a contract for a waste-water treatment facility to another bidder. Because Luterbach sought only declaratory and injunctive relief and construction of the facility was substantially completed when the district court entered judgment, we vacate the district court's judgment and remand with directions to dismiss as moot.

## I

In February 1981 the EPA, pursuant to Title II of the Clean Water Act of 1977, 33 U.S.C. § 1281(g)(1), awarded the Village of East Troy, Wisconsin, a grant for 75 percent of the construction cost of a waste-water treatment facility. In March 1981 the Village invited construction firms to bid on the project.

The Village informed bidders that the EPA's Minority Business Enterprises ("MBE") policy, see 43 Fed.Reg. 60220 (1978), set as a goal participation by minority businesses in ten percent of the cost of the work under the contract. The Village instructed bidders to strive to comply with the ten percent goal, to state in the bid whether the goal would be met, and, if the goal could not be met, to document efforts taken by the bidder to encourage minority participation and reasons for failing to meet the goal. The bidding instructions, which the Village adopted from those recommended by the EPA's regional office, stated in pertinent part:

> Failure to submit such [MBE] information *shall* be deemed, relative to MBE compliance, nonresponsive.
>
> . . . .
>
> Failure to submit such [MBE] information *may* cause rejection of the bid as nonresponsive.

Instructions to Bidders § 21(B)(1), (C)(1) (emphasis added).

The Village opened the bids for the waste-water treatment facility in April 1981. Joseph Lorenz, Inc. ("Lorenz") submitted the low bid. However, Lorenz listed minority participation as zero percent and did not document efforts taken to encourage minority participation or reasons that the goal was not met. The bid submitted by James Luterbach Construction Co. ("Luterbach") was the second lowest. It listed minority participation as 0.009 percent and documented efforts to encourage minority participation and reasons for not meeting the MBE goal. Following the opening of the bids, both Lorenz and Luterbach informed the Village of errors in their statements of MBE participation. Lorenz's should have been 10 percent, instead of 0 percent. Luterbach's should have been 0.9 percent, rather than 0.009 percent.

In May 1981 the Village rejected Lorenz's bid as "nonresponsive" for failure to comply with the MBE participation requirements. "Bid responsiveness" and "bidder responsibility" are terms of art used in government procurement contracts. A bid is responsive if the bidder promises to do exactly what the bidding instructions demand. A bidder is responsible if it can perform the contract as promised. Whereas bidder responsibility is determined on the basis of information available before or after submission of the bid, bid responsiveness is determined only by facts available prior to or at the opening of the bid. Lorenz filed a protest to this decision with the Village pursuant to 40 C.F.R. 35.939. After a public hearing, the Village affirmed its decision that Lorenz's bid was nonresponsive and denied the protest.

Lorenz and its proposed minority business enterprise subcontractor then filed requests for review of the Village's decision with the EPA's Regional Administrator. Valdas Adamkus, then the Acting and now the Regional Administrator, adopted the report and recommendation of the EPA Regional Counsel and reversed the Village's decision in July 1981. Adamkus decided that the bidding instructions were ambiguous as to whether compliance with the MBE reporting requirements was a matter of bid responsiveness or of bidder responsibility. The Regional Administrator reasoned that the bidding instructions created this ambiguity by stating that noncompliance "may cause rejection," rather than stating that noncompliance shall cause rejection of the bid. EPA regulations provide that the "grantee shall not reject a bid as nonresponsive for failure to list or otherwise indicate the selection of a subcontractor(s) or equipment, unless the grantee has unambiguously stated in the solicitation document that such failure to list *shall* render a bid nonresponsive and *shall* cause rejection of the bid." 40 C.F.R. 35.938–4(h)(6) (emphasis added). The Regional Administrator, however, did not address the additional language in the bidding instructions that "[f]ailure to submit such information shall be deemed, relative to MBE compliance, nonresponsive." He noted that bidders may provide post-bid documentation on matters of bidder responsibility, but cannot supplement matters of bid responsiveness. Lorenz supplemented its bid in the reasonable belief that MBE documentation was a matter of bidder responsibility, rather than bid responsiveness. He therefore concluded that the Village improperly rejected Lorenz's bid as nonresponsive. The Regional Administrator thus instructed the Village, pursuant to 40 C.F.R. § 35.939(e)(5), to award the contract to Lorenz.

Having learned that the Village would abide by the Regional Administrator's determination, Luterbach filed suit in August 1981 against Adamkus, the Environmental Protection Agency, the Village and the President of the Village Board, Kenneth Pluess. In its complaint Luterbach sought a declaratory judgment that it should be awarded the contract, and requested preliminary and permanent injunctions enjoining the award of the contract and the payment of any public funds to Lorenz. Luterbach did not, however, seek damages. The district court dismissed the Village and Pluess as defendants in January 1982. Luterbach does not now appeal from that dismissal order. In January 1984, two

years later, the district court granted the remaining federal defendants' motion for summary judgment. *James Luterbach Construction Co. v. Adamkus*, 577 F.Supp. 869 (E.D.Wis.1984). It held that the Regional Administrator had a reasonable basis for his decision. *Id.* at 872. Luterbach appeals from this judgment.

The district court did not address the EPA's argument in its motion for summary judgment that the completion of the plant mooted Luterbach's suit. Nonetheless, the uncontested affidavit of James Jensen, Engineer for the Village of East Troy, submitted in support of defendants' motion for summary judgment, states that as of June 1983 "fully 98 [percent] of all construction work was completed on the sewerage treatment plant" and that the "facility is now fully operational, having first gone 'on-line' on March 15, 1983."

## II

Luterbach seeks a declaratory judgment that it should have been awarded the construction contract on the basis that the EPA improperly applied federal regulations, instead of Wisconsin law, when it instructed the Village of East Troy to award the contract to Lorenz. Luterbach, however, does not dispute that construction of the wastewater treatment facility has been completed. In light of this fact, neither a declaratory judgment that the EPA incorrectly instructed the Village to grant the contract to Lorenz, nor an injunction barring the award of the contract or the payment of public funds to Lorenz, which Luterbach had requested in its complaint, would afford Luterbach relief.

■ Luterbach did not seek damages in its complaint or on any other occasion before the district court. Indeed, it stated in its complaint that it had no adequate remedy at law other than a declaratory judgment. Complaint ¶ 5. In an attempt to avoid mootness, Luterbach asks for damages for the first time on appeal. We will not consider Luterbach's prayer for damages because it was not brought before the district court. *See Walker v. Maccabees*

*Mutual Life Insurance Co.*, 753 F.2d 599, 602 (7th Cir.1985). Because a declaratory judgment and an injunction cannot afford Luterbach relief and because its claim for damages is not properly before us, Luterbach's suit is moot.

■ Luterbach, however, urges that its claim is not moot because it is capable of repetition, yet evading review. *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Before we can find that a claim is not moot on the ground that it is capable of repetition yet evading review, two conditions must be met: " 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration and there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again.' " *United States v. Peters*, 754 F.2d 753, 758 (7th Cir.1985) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979) ). In this case, neither was the challenged action too short to be litigated fully prior to its expiration, nor is there any reasonable expectation that Luterbach will be subjected to the same action again.

This is not a case that inevitably evaded review because of the short duration of the challenged action. The wastewater treatment plant was not built in a day. A year and a half passed from the time that the EPA instructed the Village to award the contract to Lorenz until the facility went on-line for the first time. The sole reason that this case evaded review is Luterbach's failure to take the steps necessary to prevent the continuing construction of the facility from mooting its suit any time within the year and a half that the plant was being built.

Even after Luterbach learned that the Village had awarded the contract to Lorenz and that Lorenz had begun construction, Luterbach never called to the district court's attention its initial request for a preliminary injunction. Moreover, Luterbach never sought a preliminary injunction

*halting construction*; it requested in its complaint only that the award of the contract and the payment of public funds be enjoined. Furthermore, it never appealed from the denial of an injunction (if the actions of the district court can be construed as a denial of an injunction) or sought a writ of mandamus ordering the district court to consider its request. Even were we to assume that the district court erred by not ruling on Luterbach's prayer in its complaint for a preliminary injunction,[1] this error does not excuse Luterbach from failing to take any action at any time during the year and a half when the plant was being built to seek a hearing on preliminary relief.

▮ Not only did Luterbach fail to prevent the completion of the facility from mooting its prayer for preliminary relief and a declaratory judgment, but it also failed to include a prayer for damages in its complaint. Had Luterbach sought damages before the district court, its claim for damages would not be moot. *See Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 846 & n. 12 (D.C.Cir. 1982); *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1094 (6th Cir.1981); *Allen M. Campbell Co. v. Lloyd Wood Construction Co.*, 446 F.2d 261, 264 (5th Cir.1971) (cases holding that disappointed bidders' claims for damages are not moot, despite completion of the contracts). Because Luterbach never asked for damages before the court below, its suit, which asked only for declaratory and injunctive relief, is moot. *See Dan Caputo Co. v. Russian River County Sanitation*, 749 F.2d 571, 574 (9th Cir.1984) (completion of contract moots unsuccessful bidder's suit because bidder did not pray for damages); *H.K. Porter Co. v. Metropolitan Dade County*, 650 F.2d 778, 782 (5th Cir.1981)

(award of contract moots unsuccessful bidder's suit because bidder did not seek damages); *see also South East Lake View Neighbors v. HUD*, 685 F.2d 1027, 1039 n. 9 (7th Cir.1982) (completion of construction deprives plaintiffs who challenge erection of building of standing; mootness analysis would be identical).

Luterbach urges on appeal that damages are appropriate. Luterbach should have included a prayer for damages in its original complaint or should have amended its complaint to add a prayer for damages. Because Luterbach never raised the question of damages before the district court, the issue is waived on appeal. *See, e.g., Walker*, 753 F.2d at 602. Luterbach argues, however, that a prayer for damages was unnecessary until the district court held that it could not grant injunctive or declaratory relief when the court dismissed the Village and the Village Board President as defendants. This contention is without merit. First, the district court ruled only that the Administrative Procedure Act did not authorize it to grant relief against the Village defendants. *James Luterbach Construction Co. v. Adamkus*, No. 81 C 1121, at 5 (E.D.Wis. Jan. 6, 1982) (unpublished order dismissing the Village defendants) ("To the extent that the plaintiff's action rests on the provisions of the APA, the Village defendants are not parties against whom the reviewing court can grant relief."). Luterbach could have obtained declaratory and injunctive relief against the EPA even after the court had dismissed the municipal defendants. Second, even if the order deprived Luterbach of all hope of declaratory and injunctive relief, it never sought to amend its complaint in the district court to include a prayer for damages.

---

1. As a matter of professional practice, counsel who seek temporary relief usually should make a motion for a preliminary injunction separate from the prayer for relief contained in the complaint. In addition to the demands of good practice, Rule 65(a)(2) of the Federal Rules of Civil Procedure seems to require a separate motion for temporary relief when it refers to "an application for a preliminary injunction." *See, e.g.,* C. Wright & A. Miller, *Federal Practice and Procedure* § 2949 (1973) ("The appropriate procedure for requesting a preliminary injunction is by motion...."). Luterbach never separately moved for a preliminary injunction halting construction.

The dispute underlying this case, therefore, was not so short in duration that it necessarily evaded review. Moreover, there is no reasonable expectation that Luterbach will be subjected to the same action by the EPA again. Indeed, four speculative events must occur before Luterbach could be subjected to the same agency action again. First, a recipient of a grant from the EPA for construction of a waste-water treatment facility must change the bidding instructions recommended by the EPA's regional office in such a way as to create an ambiguity as to whether compliance with the MBE reporting requirements is a matter of bid responsiveness or of bidder responsibility. Second, the grantee must reject the low bid as nonresponsive to the MBE requirements. Third, the low bidder must supplement his bid with information concerning MBE participation that makes the bidder responsible. Fourth, to enjoy standing to challenge the EPA decision to reinstate the low bid, Luterbach must be the second low, responsive, responsible bidder. Only if these four contingencies occur can Luterbach again challenge the EPA's decision to instruct a grantee to award a contract for construction of a federally-funded waste-water treatment facility to a bidder other than Luterbach on the ground that the grantee improperly rejected the low bid as being nonresponsive with MBE reporting requirements. Thus, it is highly speculative, if not impossible, that Luterbach will be subjected to the same agency action again. Luterbach seeks a declaration that the EPA should apply state law, rather than federal law, to the procurement of such contracts. Because the issue is unlikely to arise again with respect to this plaintiff, the declaration that Luterbach seeks is an advisory opinion which we will not render.

We hold that Luterbach's suit is moot. We reject Luterbach's suggestion that its complaint is capable of repetition, yet evading review. In light of our holding, we express no opinion on the merits. Because the suit became moot when it was before the district court, we vacate the district court's judgment order and remand with directions to dismiss this action as moot. *See United States v. Munsingwear*, 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950); *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936).

So Ordered.